O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINA LEE HUERTA, ) | Case No. EDCV 10-1336-OP |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /
/ / /
/ / /
/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 6, 7.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") obtained adequate waiver from Plaintiff to proceed without representation at the hearing, and whether Plaintiff suffered prejudice as result of such waiver;

(2) Whether the ALJ properly considered the relevant medical evidence of record; and

(3) Whether the ALJ properly evaluated Plaintiff's credibility.

(JS at 3.)

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

# III.
# DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and chronic obstructive pulmonary disease. (Administrative Record ("AR") at 16.)  The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:  lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking six hours in an eight-hour day with "position changes1-3 minutes every hour"; sitting without limitations except for "position changes1-3 minutes every hour"; occasional climbing, stairs, stooping, kneeling, crouching, crawling, balancing, and bending; no climbing ladders, ropes, or scaffolds; no exposure to sudden extreme temperature changes or to airborne irritants at concentrations above street level; no responsibility for the safety of others; and no activities requiring hypervigilence. (Id. at 17.)

Relying on the testimony of the vocational expert ("VE") to determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base, the ALJ asked the VE whether, in light of Plaintiff's age, education, work experience, and RFC, she would be able to perform any jobs existing in the national economy. (Id. at 19-20, 45-48.)  Based on the testimony of the VE, the ALJ determined Plaintiff could perform work as a small product assembler and officer helper. (Id. at 20.)

**B.    Plaintiff Suffered No Prejudice from His Waiver of Counsel.**

Plaintiff contends that the ALJ's failure to obtain a proper waiver of counsel at the administrative hearing rendered the proceedings unfair and caused Plaintiff to suffer prejudice. (JS at 4-7.)  Plaintiff contends that the ALJ failed to obtain any meaningful testimony from Plaintiff regarding her symptoms and limitations. Plaintiff further contends that she was unable to cross-examine the medical and

vocational experts regarding Plaintiff's limitations, and particularly regarding her alleged impairment of the upper extremities. (Id. at 3-8.) The Court disagrees with Plaintiff's contentions.

### 1. Applicable Law.

While an ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, that duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect his or her own interests. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d, 1144, 1150 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). When a claimant appears at a hearing without counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). Although a plaintiff has the right to be represented by counsel at an administrative hearing before an ALJ, the "[l]ack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings." Key, 754 F.2d at 1551 (citing Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)).

### 2. Analysis.

#### a. Waiver.

While not indicative of a lack of prejudice or unfairness, it is notable that Plaintiff received numerous separate notices regarding her right to counsel prior to the hearing. (AR at 79-83, 85, 90-91, 104-05, 116, 120-21, 124, 128-29, 142, 147-48.) At the outset of the first hearing, the ALJ engaged in the following dialogue with Plaintiff:

> ALJ: Now, and the notices that have been sent to you, you've been advised of your right to be represented at this hearing by an

|   |   |
|---|---|
| 1 | [attorney] or other qualified individual if you so choose, although such |
| 2 | representation is not a requirement.  You appear without a |
| 3 | representative.  I'm going to assume, unless you tell me otherwise, that |
| 4 | you are aware [you] have a right to be represented but that you're |
| 5 | choosing not to retain a representative, is that correct? |
| 6 |     CLMT: Correct -- |
| 7 |     ALJ: Okay. |
| 8 |     CLMT:  -- if I understand the -- |
| 9 |     ALJ: Okay. |
| 10 |     CLMT: -- you know -- |
| 11 |     ALJ: You, you're choosing not to be represented. |
| 12 |     CLMT: Exactly -- |
| 13 |     ALJ: Okay -- |
| 14 |     CLMT: -- exactly. |
| 15 |     ALJ:  -- all right, very good. |
| 16 |     CLMT: Okay. |
| 17 | (Id. at 26-27.) |
| 18 | After a continuance, the ALJ opened the second hearing with the following |
| 19 | discussion with Plaintiff: |
| 20 |     ALJ: In the notices that have been sent to you, you've been |
| 21 | advised of your right to be represented at this hearing by an attorney or |
| 22 | other qualified person if you so choose, although such representation is |
| 23 | not required.  You appear without a representative, so I'm going to |
| 24 | assume that you're aware you have a right to be represented but you are |
| 25 | choosing to represent yourself.  Is that correct? |
| 26 |     CLMT: Correct. |
| 27 |     ALJ: Very good. |
| 28 |     CLMT: Because I had a lot of problems, you know.  I heard |

>different vibes when I was talking to them. So I said never mind, I'll
>just --

(AR at 39-40.)

From the Court's review of the record, there is nothing improper about Plaintiff's waiver of counsel. The written notices, along with the ALJ's verbal notices, sufficiently informed Plaintiff about her right to counsel. Thus, Plaintiff knowingly and intelligently waived her right to counsel at the hearing. See e.g., Perez v. Astrue, CV 07-06726-MAN, 2009 WL 3170041, at *4 (C.D. Cal. Sept. 29, 2009) (finding plaintiff's waiver to be deficient where there was no dialogue on record between the ALJ and plaintiff indicating whether plaintiff understood her right to representation and her informed waiver of that representation); compare Polk v. Astrue, EDCV 09-615-OP, 2010 WL 148203 (C.D. Cal. 2010) (written and verbal notices sufficiently informed Plaintiff of right to representation).

### b. **Prejudice.**

Even if Plaintiff did not properly waive her right to counsel, the Court finds that Plaintiff did not suffer any prejudice, as the record was fully and fairly developed. First, although the ALJ did not extensively question Plaintiff regarding her symptoms and alleged impairments, the ALJ did engage in some questioning of Plaintiff. Of particular relevance to the current claim, Plaintiff testified that her arms get tired, her whole body feels swollen and painful, her hand curls up, her hands swell up and "pop like popcorn." (AR at 49-50.) In addition, the ALJ had before him Plaintiff's Exertional Daily Activities Questionnaire, Fatigue Questionnaire, and Adult Asthma Questionnaire. (AR at 184-93.) The ALJ then questioned the VE about Plaintiff's functional abilities, in light of

Plaintiff's impairments as supported by the record.[3]  (Id. at 46-48.)  Thereafter, Plaintiff was given an opportunity to explain to the ALJ how her impairments prevent her from performing the types of jobs suggested by the vocational expert. (Id. at 49-51.)  Accordingly, Plaintiff did not suffer any prejudice resulting from not having counsel present.

Based on the foregoing, Plaintiff has not demonstrated prejudice or unfairness in her administrative proceeding resulting from not having counsel present.  Thus, remand or reversal is not warranted.

**C.     The ALJ Properly Considered and Weighed the Medical Evidence.**

Plaintiff contends that the ALJ erred in failing to consider all of the relevant medical evidence.  Specifically, Plaintiff argues that the ALJ adopted the medical expert's findings word for word despite the fact that neither the medical expert nor the ALJ considered evidence of Plaintiff's upper extremity impairment or a September 2000 x-ray report indicating lumbar spine disorder.  (JS at 11-12.)  The Court disagrees.

**1.     Applicable Law.**

The ALJ is responsible for considering the medical evidence of record in making a determination of disability.  20 C.F.R. §§ 404.1512(d), (e), 404.1527, 404.1545(a)(3).  However, the ALJ is not required to "discuss every piece of evidence" so long as the decision was supported by substantial evidence.  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).  Rather, the ALJ need only explain why "significant probative evidence has been rejected." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393 (9th Cir. 1984).

///

---

[3]  While the ALJ did not provide the VE with a hypothetical including Plaintiff's alleged upper extremity impairment, this was not error, as the objective medical evidence did not support a finding that Plaintiff suffered from a material upper extremity impairment.

7

2. **Analysis.**

   a. **The ALJ's Consideration of Evidence of an Upper Extremity Impairment.**

Here, there was no evidence of a disabling upper extremity impairment. First, the medical record indicates that Plaintiff underwent left carpal tunnel release surgery in 1995. (AR at 232.) However, there is no indication anywhere in the record that Plaintiff continued to suffer from any debilitating effects of carpal tunnel syndrome subsequent to the surgical procedure. In addition, the record reflects Plaintiff's complaint to her treating physician that her left hand and arm were "curling up." (Id. at 263.) Despite this complaint, none of the treating or consultative sources indicated that Plaintiff's condition caused any significant impairments or would prevent work activity. Further, although Plaintiff's treating physician indicated a diagnosis of "arthritis" on the same date she complained of her hand and arm "curling up," she also complained of other symptoms that day. It is not readily apparent from the treatment note that the diagnosis of arthritis was in reference to Plaintiff's upper extremities rather than her complaints of neck and back pain. (Id.) Finally, the medical evidence reflects the existence of a ganglion cyst in Plaintiff's left wrist as early as December 10, 1996 (id. at 315), and as recently as April 5, 2008 (id. at 346). However, the most recent report indicated that the cyst measured only one centimeter by one centimeter. (Id.) Moreover, despite the existence of the cyst for over ten years, there is no indication anywhere in the record that the cyst caused Plaintiff to suffer any functional limitations.

Since none of the medical evidence supports a finding that Plaintiff suffered functional limitations as a result of any of her alleged upper extremity impairments, the evidence cited by Plaintiff does not amount to "significant probative evidence" requiring an explicit discussion by the ALJ. Vincent, 739 F.2d 1393.

/ / /

1                    **b.      The ALJ's Consideration of Evidence of a Lumbar Spine**
2                             **Disorder.**
3         Neither did the ALJ fail to consider probative evidence of Plaintiff's lumbar
4 spine impairment.  As Plaintiff notes, a September 12, 2000, x-ray report indicated
5 that Plaintiff suffered from "bilateral L5 spondylolysis with a 14mm
6 spondylolisthesis and marked intervertebral osteochondrosis and accentuation of
7 the lumbosacral angle." (AR at 240.)  The ALJ did not mention this report
8 specifically.  However, the record indicates that in providing expert testimony to
9 the ALJ, the medical expert reviewed this and other exhibits.  (Id. at 42.)
10 Moreover, the ALJ cited and discussed the findings of an x-ray report dated July 3,
11 2000, about two months prior to the report cited by Plaintiff.  Significantly, the
12 July 2000 report also reflected significant findings, including "persistent grade II
13 spondylolisthesis at the L6-S1 level as described which is considered to be either
14 unchanged or minimally increased from the prior study in 1998." (Id. at 332.)
15 After considering the medical evidence and the medical expert's testimony, the
16 ALJ concluded that Plaintiff required significant accommodations due to disease
17 of the lumbar spine.  Specifically, the ALJ limited Plaintiff to light work with the
18 ability to change positions often and perform only occasional postural activities.
19 (Id. at 17.)  The record does not suggest that the September 2000 x-ray report
20 would have necessitated limitations greater than those provided for in the ALJ's
21 RFC assessment.
22         Accordingly, the ALJ's determination with respect to Plaintiff's lumbar
23 spine disorder was supported by substantial evidence and was not made without
24 consideration of any "significant probative evidence." Howard, 341 F.3d at 1012;
25 Vincent, 739 F.2d 1393.  Thus, this claim does not warrant remand or reversal.[4]

---

[4] The Court also notes that Plaintiff had been denied Social Security
benefits prior to the current application, mostly recently on April 25, 2002.  (AR at
(continued...)

## D. The ALJ Properly Considered Plaintiff's Subjective Complaints and Properly Assessed Plaintiff's Credibility.

Finally, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Plaintiff's subjective complaints of an upper extremity impairment. (JS at 15-16.) The Court disagrees with Plaintiff's contentions.

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v.

---

[4](...continued)
54-60, 172-74.) Much of the evidence Plaintiff relies on for this claim pre-dates the last denial. The Court cannot reconsider whether the evidence Plaintiff cites established a disability prior to the last denial, as the doctrine of res judicata bars review of a period of alleged disability with respect to which a denial order has become final. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995); Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir. 1985). Crucially, Plaintiff is unable to establish how the past evidence is indicative of a current disability and thus is unable to show that the ALJ failed to consider "significant probative evidence" of a current period of disability. Howard, 341 F.3d at 1012; Vincent, 739 F.2d 1393.

Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

Social Security Ruling ("SSR") 96-7p[5] further provides factors that may be considered to determine a claimant's credibility such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

---

[5] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

11

The ALJ concluded that Plaintiff suffers from degenerative disc disease of the lumbar spine and chronic obstructive pulmonary disease. (AR at 16.) The ALJ did not make a finding that Plaintiff suffers from a current medically determinable upper extremity impairment that could reasonably be expected to produce some degree of pain or other symptoms, and the medical evidence does not support the existence of such an impairment. Because Plaintiff failed to carry her burden at step one of the Cotton test, the ALJ was not required to give reasons for rejecting her subjective complaints of an upper extremity impairment.

Nevertheless, the ALJ made the following conclusion with respect to Plaintiff's alleged upper extremities symptoms:

> The claimant testified at the hearing that she could not do any type of work because her arms get tired and swell up. The undersigned took note of the fact that neither the treating physician nor the consulting examiner mentions these symptoms in the medical evidence of record.

(AR at 18.)

The ALJ is correct, and thus provided a clear and convincing reason for rejecting Plaintiff's complaints of a disabling upper extremity impairment. Nowhere in the treatment notes from Plaintiff's treating and consultative physicians is there a report of arm fatigue or swelling. There is a report by Plaintiff on October 6, 2000, of a "problem" with her left arm (id. at 283)[6] and a report on March 31, 2006, of her left arm "curling up" (id. at 263).[7] However, there is not a single complaint of arm/hand swelling or fatigue, and there are no indications in the record of an objective finding of such impairments. To the

---

[6] Although not clear, the treatment note appears to read that Plaintiff complained of a problem with her "lower" left arm. (AR at 283.)

[7] There is also an isolated complaint of right elbow problems on May 12, 1998. (AR at 307.) However, this pre-dates the April 25, 2002, denial of benefits, and Plaintiff has not shown how it is relevant to the current claim of disability.

contrary, except for a small cyst in Plaintiff's wrist, the consultative examiner reported normal findings with respect to Plaintiff's upper extremities. (Id. at 345-46.)

Plaintiff notes several citations from the paperwork she submitted to the Commissioner in which she complains of pain, cramps, tingling, arthritis, and an inability to straighten her fingers. (JS at 15.) However, Plaintiff failed to provide a single citation for a complaint of arm or hand swelling. Significantly, Plaintiff does not provide any citations to the medical record indicating that she ever complained of such swelling to her physicians.

Based on the foregoing, the Court finds that Plaintiff's argument regarding credibility is without merit. Thus, remand or reversal is not warranted.

## IV.

## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: April 29, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge